ORIGINAL

**CV 17-5140**

BRODIE, J.

PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
Page 2
★ AUG 28 2017 ★
BROOKLYN OFFICE

| United States District Court | District **Eastern** |
|---|---|

| Name (under which you were convicted): <br> **Andrew Smart** | Docket or Case No.: |
|---|---|

| Place of Confinement: <br> **Shawangunk Correctional Facility** | Prisoner No.: <br> **12A5165** |
|---|---|

| Petitioner (include the name under which you were convicted) <br> **Andrew Smart** | v. | Respondent (authorized person having custody of petitioner) <br> **Jamie Lamanna** |
|---|---|---|

The Attorney General of the State of **New York**

## PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging: _____
   **Kings County Supreme Court,320 Jay Street**
   **Brooklyn,New york ,11201**
   (b) Criminal docket or case number (if you know): **2011KN032040 IND#3440-2011**

2. (a) Date of the judgment of conviction (if you know): **October 16, 2012**
   (b) Date of sentencing: **November 7, 2012**

3. Length of sentence: **Life without the possibility of Parole**

4. In this case, were you convicted on more than one count or of more than one crime?   Yes ☒   No ☐

5. Identify all crimes of which you were convicted and sentenced in this case: **2 Counts of Murder**
   **in the first degree,125.27(1A)(Viii),Attempted Murder in**
   **the second degree,110.00/125.25,and criminal possesion of**
   **a weapon in the second degree 265.03(1B) and 265.03(3)**

6. (a) What was your plea? (Check one)
   (1) Not guilty **X**        (3) Nolo contendere (no contest) ☐
   (2) Guilty ☐                (4) Insanity plea ☐
   (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge,
   what did you plead guilty to and what did you plead not guilty to? _____

_____
_____
_____
_____

(c) If you went to trial, what kind of trial did you have? (Check one)

Jury [X]    Judge only [ ]

7. Did you testify at either a pretrial hearing, trial or a post-trial hearing?

Yes [ ] No [X]

8. Did you appeal from the judgment of conviction?

Yes [X] No [ ]

9. If you did appeal, answer the following:

(a) Name of court: <u>New York Supreme Court Appellate Division Second Dept.</u>

(b) Docket or case number (if you know): <u>A.D No.12-10161 IND.No3440-11</u>

(c) Result: <u>Affirmed (Dissent Opinion)</u>

(d) Date of result (if you know): <u>August 3, 2016</u>

(e) Citation to the case (if you know): <u>People v. Smart 142 A.D.3d 513</u>

(f) Grounds raised: <u>See Addendum 1 (Enclosed)</u>
_____
_____
_____
_____
_____

(g) Did you seek further review by a higher state court?   Yes [X] No [ ]

If yes, answer the following:

(1) Name of court: <u>New York State Court of Appeals</u>

(2) Docket or case number (if you know): <u>APL-2017-00011 IND.No.3440-11</u>

(3) Result: <u>Affirmed</u>

(4) Date of result (if you know): <u>June 29,2017</u>

(5) Citation to the case (if you know): _____

(6) Grounds raised: <u>See Addendum 2 (Enclosed)</u>
_____
_____
_____

(h) Did you file a petition for certiorari in the United States Supreme Court?   Yes [ ] No [X]

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

_____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?

Yes ☐   No ☒

11. If your answer to Question 10 was "Yes," give the following information:

(a)  (1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

Yes ☐   No ☐

(7) Result: _____

(8) Date of result (if you know): _____

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

Yes☐ No☐

(7) Result: _____

(8) Date of result (if you know): _____

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

Yes☐ No☐

(7) Result: _____

(8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:     Yes☐ No☐

(2) Second petition:   Yes☐ No☐

(3) Third petition:    Yes☐ No☐

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not: _____

_____

_____

_____

12.  For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the <u>facts</u> supporting each ground.

<u>CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court.  Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.</u>

**GROUND ONE:** __See Addendum 3 (Enclosed)__

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____
_____See Addendum 3_____
_____
_____
_____
_____
_____

(b) If you did not exhaust your state remedies on Ground One, explain why: _____
_____
_____

(c)  **Direct Appeal of Ground One:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

    Yes [ X ]  No [  ]

    (2) If you did <u>not</u> raise this issue in your direct appeal, explain why: _____
_____
_____

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

    Yes [  ]  No [  ]

    (2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____
_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?

Yes ☐  No ☐

(4) Did you appeal from the denial of your motion or petition?

Yes ☐  No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐  No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

(e) Other Remedies: Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: _____

_____

_____

**GROUND TWO:** ___See Addendum 3 (Enclosed)_____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____

_____See Addendum 3 (Enclosed)_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Two, explain why: _____

_____ Issue for Ground Two lacks merit _____

_____

_____

(c)  **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes **X**  No☐

(2) If you did **not** raise this issue in your direct appeal, explain why: _____

_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

Yes☐  No☐

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(3) Did you receive a hearing on your motion or petition?

Yes☐  No☐

(4) Did you appeal from the denial of your motion or petition?

Yes☐  No☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes☐  No☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: _____

_____

_____

_____

**GROUND THREE:** __See Addendum 3 (Enclosed)_____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____

_____See Addendum 3 (Enclosed)_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

_____

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☒ No ☐

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

Yes ☐ No ☐

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(3) Did you receive a hearing on your motion or petition?
Yes☐  No☐

(4) Did you appeal from the denial of your motion or petition?
Yes☐  No☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?
Yes☐  No☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: _____

_____

**GROUND FOUR:**   See Addendum 3 (Enclosed.)

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____

        See Addendum 3 (Enclosed)

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____The Court of Appeals actually doesn't have any power

to reduce sentences the way the Appellate Division does._____

_____

(c)  **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?
Yes [ X ] No [  ]

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why: _____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?
Yes [  ] No [  ]

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(3) Did you receive a hearing on your motion or petition?
Yes [  ] No [  ]

(4) Did you appeal from the denial of your motion or petition?
Yes [  ] No [  ]

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?
Yes [  ] No [  ]

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: _____

_____

_____

_____

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?   Yes ☐   No ☒

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: Ground Two-Lacks Merit  and Ground Four-The Court of Appeals actually doesn't have any power to reduce sentences the way the Appellate Division does.

(b) Is there any ground in this petition that has not been presented in some state or federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them: _____

_____

_____

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?  Yes ☐   No ☒

If "Yes," state the name and  location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy of any court opinions or orders, if available. _____

_____

_____

_____

_____

_____

15. Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?        Yes ☐   No ☒

    If "Yes," state the name and  location of the court, the docket or case number, the type of proceeding, and the issues raised. _____

_____

_____

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

    (a) At preliminary hearing: Michael A. Millet 32 Court Street (Suite 408) Brooklyn, New York 11201

    (b) At arraignment and plea: Michael A. Millet 32 Court Street (Suite 408) Brooklyn, New York 11201

    (c) At trial: Michael A. Millet 32 Court Street (Suite 408) Brooklyn, New York 11201

    (d) At sentencing: Michael A. Millet 32 Court Street (Suite 408) Brooklyn, New York 11201

    (e) On appeal: David P. Greenberg Appellate Advocates 111 John Street-9th Floor New York 10038

    (f) In any post-conviction proceeding: _____

_____

    (g) On appeal from any ruling against you in a post-conviction proceeding: _____

_____

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?        Yes ☐   No ☒

    (a) If so, give name and location of court that imposed the other sentence you will serve in the future:

_____

_____

    (b) Give the date the other sentence was imposed: _____

    (c) Give the length of the other sentence: _____

    (d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?   Yes ☐   No ☐ .

18.  TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that: .

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of —
   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;
   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Page 15

Therefore, petitioner asks that the Court grant the following relief:  Immediate release from
custody.

or any other relief to which petitioner may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this
Petition for Writ of Habeas Corpus was placed in the prison mailing system on  *August 23, 2017*
_____ (month, date, year).

Executed (signed) on  *August 23, 2017*  (date).

*andrew Amant*
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing
this petition.

## Addendum 1

**Appellant's Brief:** (1) In basing its case on a series of problematic witnesses, the prosecution failed to prove beyond appellant's guilt reasonable doubt and the verdict in this case was against the weight of the evidence. (2) The court deprived appellant of due process and his constitutional right to counsel by failing to respond properly to his motion for reassignment of counsel. (3) Two key prosecution witness were subjected to suggestive lineups. (4) Appellant's sentence should be reduced to a term that gives him an opportunity for parole.

## Addendum 2

Appellant was subjected to highly suggestive lineup and deprived of due process by the failure to suppress identification testimony, where he stood out because of his diminutive stature, light skin color, red shirt, youth, and neck tattoo, and the courts below employed an incorrect legal standard in discounting the tattoo simply because the lineup witnesses had not mentioned it to the police.

## Addendum 3

## Grounds one through four and supporting facts

**Ground One**: In basing its case on a series of problematic witnesses, the prosecutor failed to prove beyond appellant's guilt reasonable doubt and the verdict in this case was against the weight of the evidence.

**Supporting Facts**: Willie Spears testified under a grant of immunity, while Derrick Henry, a young man with an affinity for finding himself on both ends of gunfire, believed that his victimization entitled him to assume the role of a vigilante. Both Been and Henry were subjected to unnecessarily suggestive lineups.

Spears who admitted that he drove the three defendants to the neighborhood where the shooting occurred and drove them away after hearing gunshots, was a fundamentally flawed witness. As the only person linked to the getaway car, which belong to his mother, his testimony fingering the others and asserting his own innocence was inherently self-serving. This, in-turn, compelled the trial court to instruct the jury on the accomplice corroboration requirement, but that hardly cured the unprepossesing Spears's problems as a witness. With a second-degree assault conviction from an unrelated incident under his belt, Spears had a criminal record of his own, although the grant of immunity he received to testify ensured that his involvement in this case would not add to that record.

Nicola Richardson's testimony also undermined Spears. Because the three gunmen walked right by her car, Richardson had an excellent opportunity to view them, yet identified none of the three defendants including appellant. Furthermore, Richardson's observation that the shooters were young, with the tallest one appearing to be about 17 and the other two as young as 14 and 15, did not match the defendants and most importantly appellant who, in 2009 was 25. Similarly, Richardson recollection that the tallest shooter was about 5'7", while the shortest one was less than 5 feet, did not match the

defendants' heights since, appellant the shortest of the three was 5'7",
Chavez was 6', and Hall was 6'2".

The prosecution relied heavily on Derrick Henry, the one surviving
victim, and Larverne Benn, the neighbor who was sitting on her stoop, neither
of whom had ever seen the gunmen before. By his own account, Henry had only
seconds in which to look at the three gunmen, all strangers to him, whom he
had not seen approaching as he sat on the stoop with Stokes and Hill eating.
As he also admitted, even after the three walked up to them, he did not look
up from his meal until one of the three asked if they were affiliated with
"Chan City". An instant later, after Hill replied that they were, all three of
the gunmen started shooting. Henry who was hit immediately lost consciousness,
then awoke only to see Stokes entering the building and falling and then the
shooters running off. Since Henry saw Stokes enter the building, he must have
looked away from the gunmen, who were below him on the sidewalk. It is hard to
imagine poorer conditions for retaining the images of one's assalants.

Henry's credibility as a witness was also dubious given his subsequent
involvement in gun violence, both as a victim and also as a shooter. Plus, his
candid admissions that he thwarted the police investigation in case because he
harbored intentions of avenging the crime himself showed him to be even less
trustworthy.

Nor could Benn have had a good look at the faces of the gunmen. Sitting
with an elderly neighbor on the stoop at 223 Bainbridge Street and watching
for an ambulette to take her to physical therapy, Benn saw the three as they
walked pass her without looking in her direction. Her comment to her neighbor
about their "thuggish" appearance established that Benn was more focused on
their bearing and dress than their faces. She also acknowledge that she paid
no further attention to them until she heard the shots. Its also clear, and

entirely understandable, that Benn was under a great deal of stress during this remarkably traumatic event.

Benn further admitted that upon hearing the gunfire, she immediately stood and tried, without success to get her elderly neighbor to go inside the building, thus looking away from the gunmen. It was only after giving up on moving her companion inside that she looked back over to 217 Bainbridge shortly after the gunmen fled. Tellingly, the day after the shooting, Benn told detectives that she had never seen the shooters before and that she could not identify them. At trial, she attributed her initial failure to cooperate to fright, hardly a factor enhancing her reliability and credibility as a witness.

Henry and Benn did not view appellant's lineup until April 2011, more than a year and a half after the incident. This, by itself, was an important factor undermining the reliability of those identification procedures. As explained in ground two post, the lineups were also seriously flawed on their own terms by a highly suggestive array of participants.

**Ground Two:** The court deprived appellant of due process and his constitutional right to counsel by failing to respond properly to his motion for reassignment of counsel.

**Supporting Facts:** Long before this case went to trial, appellant made a pro se motion for substitution of counsel. There is no record, however, that the court ever entered or ruled on that motion. The court's failure to resolve appellant's timely, supported request for a new lawyer deprived him of his constitutional rights.

Here, appellant moved pro se for reassignment of counsel based on defense counsel's failure to keep in touch; provide discovery materials appellant had requested from him; or apprise appellant of his options. As

appellant explained, at the time of his motion, he had been

> detained on Rikers Island for 11 months. My lawyer
> has refused to give me any discovery documents to
> help me in understanding the charges against me.
> He has denied me my legal visits with him to
> discuss any of my options and his progress with my
> defense. He has violated my due process rights and
> my legal process that I am due by the constitution.
> His attitude and ethics is not working in my best
> interest and he is not working for my interest
> towards my defense. I have constantly requested to
> speak with him and to get my legal documents to
> help me prepare for any defense and he has always
> deliberately denied me.

There is no record, however, that the court ever considered or resolved

appellant's motion. The minutes of the proceeding held on the motion's return

date contained no reference to the application. Nor is there a written

decision or other notation in the Supreme Court file explaining what came of

the motion. There was also no indication that appellant made the motion for

the purpose of delay, it having been filed six months before the case

proceeded to his pretrial suppression hearing.

**Ground Three:** Two key witnesses were subjected to suggestive lineups.

**Supporting Facts:** Appellant stood out in his lineup in several ways. He was

the only one of the participants matching all of the descriptive factors

provided to the police by Benn: one of only two noticeably light-skinned

participants; the only participant matching Benn's age estimate; the shortest;

and the only one wearing a fully Red shirt. While the hearing record does not

show how Henry described any of the shooters appellant undoubtedly stood out

in his eyes as well, given the inherent suggestiveness of the procedure. Under

these circumstances, the lineup identifications made by these witness should

have been allowed to make in-court identification absent a showing of

independent source.

Here there were several "visual clues" that inevitably "oriented the viewer" toward appellant, that he would be singled out for identification. The first suggestive factor was that appellant was the only lineup participant in a red shirt, the color Benn said the shooter she later identified as appellant was wearing. While appellant's shirt featured background designs and the filler in the first position, was wearing a garment with some red blended into it, appellant was the only participant truly in red and identifiable as such.

Appellant, along with the filler in the fifth position, also stood out as one of two light-skinned black participants in the lineup, and appears to have been the lightest of them all. Lightness of skin color was another characteristic that Benn had originally conveyed to the police in describing this particular shooter.

Benn also described the shooter she identified as appellant as between 5'2" and 5'4", with apparently no reference to weight, suggesting thereby that he was not notably heavy. But there again, at 5'6", 145 pounds, appellant was plainly the shortest and slightest person in group, something very apparent in the lineup photograph even with the participants seated. This height contrast undoubtedly became especially pronounced when, at Benn's request, the participants were individually paraded up to the viewing window.

Appellant was also the participant who most looked like he was in his twenties, another descriptive factor mentioned by Benn, and one that most or all of the remaining men in the array did not match. Notably, the court acknowledged that appellant appeared to be the youngest while unconvincingly suggesting that filler five also appeared youthful.

There is a further risk that Benn noticed appellant's tattoo as he came close to the window, which might have triggered a recollection that she neglected to share with the police. Inasmuch as the police thought it

necessary to cover the tattoo in the photo array that she viewed, their failure to do the same with respect to appellant's lineup was inexplicable. The continuum of suggestive factors that caused appellant to stand out for Benn were equally on display when Henry viewed the exact lineup. Although there was no testimony at the Wade hearing about Henry's description of the shooter he identified as appellant, a lineup can be unduly suggestive simply because the defendant looks very different from the fillers. The photograph of appellant's lineup does not lie and the procedure was just as unfair with regard to Henry as with Benn.

Defense counsel's argument at the time of the Wade hearing, along with the court's ruling, preserved this issue as to both lineup identifications. Furthermore, because no independent source hearing was ever held despite defense counsel's request for one neither Benn, nor Henry should have been permitted to make in-court identifications.

The erroneous admission of the lineup and in-court identifications was not harmless beyond a reasonable doubt. As discussed in ground 1, even on its own terms, the evidence of the lineup identifications and without the tainted in-court identification elicited from Henry and Benn, the overall case against appellant would have been thinner and the evidence presented to the jury entirely different.

**Ground Four**: Appellant sentence should be reduced to a term that gives him an opportunity for parole.

**Supporting Facts**: Prior to this case, appellant had a minimal criminal record consisting of two misdemeanors, neither involving or resulting in a prison term. He also earned his GED after dropping out of high school in twelfth grade and worked in a museum for a year.

There is no escaping the reality that the shooting here was both

shocking and tragic. As a result, and because of the sentence guidelines applicable to first-degree murder, appellant could not escape severe punishment if convicted. However, with his very limited prior exposure to the criminal justice system, and especially given the absence of violence in his past, he should at least have a chance to seek parole release at some point later in his life. With so many years of incarceration ahead of him, appellant will have a great opportunity to demonstrate that his own life can still have value and that he can be productive.

The opportunity to be considered for parole would simply mean that the door has not shut for good on appellant. He should have the chance to redeem himself and regain his liberty if the parole authorities judge him worthy many years down the road. Accordingly, appellant's sentence of life in prison without the possibility of parole should be reduced to an indeterminate term that affords him the opportunity for release some time in the future.